IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs <br>                           Plaintiff <br><br> v. <br><br> Erik Smith, in his official capacity *et al* <br>                         Defendants | Case No.  5:25-cv-4067-TC-GEB <br><br> PLAINTIFFS' MOTION FOR <br> PRELIMINARY INJUNCTION & <br> REQUEST FOR HEARING |

**LEGAL STANDARD**

The Court is familiar with the injunction standards.  *Spiehs v. Lewis,* No. 23-CV-04121-TC-GEB, 2024 WL 5107274 at *3 (D.Kan. Dec. 13, 2024).  This Court can also exercise supplemental jurisdiction and grant injunctive relief pursuant to the Kansas Preservation of Religious Freedom Act as the actions and policy of the defendant Department of Administration has burdened Dr. Spiehs' exercise of religion.

**Facts**

The Secretary of the Kansas Department of Administration (DoA) has had a prior policy of issuing permits to private individuals and groups for what the DoA called "activities" and "events" at the Kansas State Capitol grounds (Capitol Usage Policy) and now a current one (New Capitol Usage Policy July 1, 2025).  The DoA had a longstanding custom and practice in which the Kansas Highway Patrol (KHP) Officers were used as a kind of "bouncer" in which a private permit event organizer was authorized to exclude individuals from the State Capitol Complex and then could invoke  KHP officers as private security enforcers to threaten an individual with arrest for trespass or to actually arrest individual as *persona non grata* of the event organizer.  While the Capitol Usage Policy (Ex. 1) did not explicitly state this

1

procedure, the custom and practice as between the DoA and KHP transpired over years – and in particular in the described two events described in the Complaint of March 28 and June 14 of this year.  However, on July 1, 2025, the Secretary of the DoA implicitly recognized this practice was improper and declared no longer that a permitted event organizer would be permitted to exclude individuals from being present at the State Capitol and further acknowledged that KHP would no longer function as an event bouncer.  Ex. 2 (New Capitol Usage Policy p.6). When Dr. Spiehs was arrested June 18, 2025, at a permitted event at the State Capitol grounds for criminal misdemeanor trespass, as a condition to his bond was his banishment from the 17.12 acres located at 300 S.W. 10th Avenue Topeka, Kansas.  Dr. Spiehs was given an August 13, 2025, appearance date.  However, as of the date of this filing, no criminal charges have been filed. ECF 1, p.30. The New Capitol Usage Policy (NCUP) in Ex.2 is divided into two parts: "Events in the Statehouse and the grounds" beginning on page 2 through page 4 which only apply to "events." The Policy then provides for "General Policies and Guidelines" which appear to apply irrespective of whether a permitted event is occurring.

In the NCUP under "Events" it states in pertinent part the following:

1. All non-meetings, public demonstrations, or outside solicitations in the Statehouse or on its grounds require the prior written approval of the Secretary, or designee, if the organizer desires to reserve a specific space.

3. The use of the public areas of the Statehouse and/or its grounds is nonexclusive, so other members of the public have free access to and may use the Statehouse and/or its grounds during the scheduled time of an event.

4. …No activity or event needing a specific space may occur without submitting and receiving approval of a Capitol Complex Events Application (Application).

5. An Application is not required for any person or group that merely wishes to come to the Statehouse or its grounds, and not reserve a specific space.

7. ...the Secretary is allowed to place certain nondiscriminatory and narrowly drawn "time, place, and manner" restrictions on events involving freedom of expression, provided such restrictions are not based on content.

8. No application will be approved if the organization, individual, or individuals submitting the application limit or restrict participation in the event on the basis of race, color, religion, sex (including pregnancy, sexual orientation, and gender identity), age, disability, national origin, or genetic information.

24. DoA reserves the right to limit the number of events held in an area to prevent conflicts as to time, place, manner or duration of the events with other events for which reservations are approved or are pending.

Under the heading of "Security/Kansas Highway Patrol" it states:

It shall not be the role of the Kansas Highway Patrol, under the management and supervision of the Superintendent, to enforce the policy, guidelines, and regulations of the Statehouse. However, should the Secretary, or designee, including the Director of OFPM, determine applicable statutes, rules, and/or regulations have been violated, or the conditions set forth in a reservation of Statehouse space have been breached, approval for the event will be revoked and the Kansas Highway Patrol may exercise its law enforcement powers and have the violator removed from the Statehouse, or arrested, if warranted. Further, during any event, the ranking Kansas Highway Patrol official in charge may also revoke approval if continuation of the activity presents an imminent threat to the safety of any person or property.

Under KAR 1-49-3 "Eating on grounds" it states:

Lunches or picnics sponsored by private groups shall not be held upon any of the grounds, stairways, or hallways of any of the buildings listed in K.A.R. 1-49-1, except upon prior approval by the secretary of administration.

Under KAR 1-49-10 it states:

Prior approval of activities. No person shall post any notices or petitions upon any of the grounds or in any of the public areas of the buildings listed in K.A.R. 1-49-1, except on the bulletin board of an agency when the consent of the agency has been secured. No person shall conduct any meeting, demonstration, or solicitation on any

of the grounds or in any of the buildings listed in K.A.R. 1-49-1 without the prior permission of the secretary of administration or the secretary's designee

On July 1, 2025, Dr. Spiehs applied online to the Secretary to conduct an event on July 15, 2025, he titled "No Kings But Jesus Rally." *See* Ex. 3 (response of Department of Administration). Despite being under the criminal bond condition of being banned from the Capitol grounds, his request was approved subject to Dr. Spiehs agreeing to the new conditions stated in July 1, 2025 Capitol Usage Policy. When Dr. Spiehs submitted his application, the DoA was publishing its prior Usage Policy which did not contain the NCUP requirements. Ex. 3. But the DoA stated it was applying the July 1, 2025, Policy. Dr. Spiehs replied that he was not agreeing to the terms of the NCUP and the DoA then denied Dr. Spiehs' request for a permit on July 15, 2025. Ex. 4.

Dr. Spiehs has religious convictions. See Ex. A (Dr. Spiehs' Sworn Statement). Dr. Spiehs verifies under oath the allegations contained in the Complaint as true. Ex. A.

**OVERVIEW**

This motion addresses the permission / permitting licensing scheme set out in the NCUP and in two listed KARs. The motion will demonstrate that the Kansas State Capitol grounds is a traditional public forum. KAR 1-49-10 prohibits pure First Amendment activities of having "any meeting," "demonstration," and "solicitation" on the grounds of the Capitol Complex. There is no significant, much less compelling, state interest in prohibiting those activities unless the Secretary provides permission. And the conditions imposed to obtain that permission are unconstitutional including

the Secretary's newly crafted anti-discrimination provision contained in paragraph 8 of his policy.

The Secretary mandates a vague – actually meaningless – requirement for his permission. The DoA requires a permit if the "activity or event" "need[s] a specific space" or an individual or group "desires to reserve a space" – inside or outside the Capitol Complex even though he has now changed his practice of allowing event organizers to exclude individuals from the Capitol Complex.   "Needing a specific space" or "reserving a space" thus has no practical meaning unless event organizers still have authority to exclude individuals from the organizer's reserved "space." Irrespective of this, upon this permit, the Secretary then conveys numerous benefits that are not otherwise available to individuals at the grounds of the Capitol along with numerous conditions and prohibitions.   One condition is in paragraph 8 (non-discrimination) a promise that a permitted event organizer must allow the participation of all individuals as volunteers, vendors, or employees in those classifications.     That participation /non-discrimination requirement violates numerous First Amendment principles as well as the restrictions and/or requirements violate time, place, and manner having no significant governmental interest in this traditional public forum.   And despite DoA now purportedly repudiating its past practice of using KHP as an event organizer's private security guard, the NUPC still criminalizes protected speech and authorizes KHP to enforce by criminal trespass and expulsion from the Capitol grounds upon the Secretary's claimed breach of a permit. Irrespective of DoA' permitting scheme or any claimed

breach of a permit, the Capitol grounds remain a traditional public forum in which individuals and groups are entitled to gather, protest, demonstrate, and solicit without the Secretary's permission. An injunction is necessary to prevent the ongoing irreparable injury to Dr. Spiehs' First Amendment rights.

### CAPITOL GROUNDS IS A TRADITIONAL PUBLIC FORUM

The Court first analyzes the playing field. The Court's forum analysis concerns the historic use and purpose of the Kansas State Capitol grounds. *See Doe v. City of Albuquerque,* 667 F.3d 1111, 1128-30 (10th Cir. 2012) ("purpose" of library is to permit the public to receive information and its "intent" was to "provide a forum for all of the City's residents to engage in the receipt of information"); *See generally Shero v. City of Grove, Okl.,* 510 F.3d 1196, 1202 (10th Cir. 2007). Thus the question is this: is the public space of the Capitol outside grounds within the category of public spaces that have, by long tradition, been recognized as places for public assembly, advocacy, and debate? The answer is yes. The Secretary has denied Dr. Spiehs a benefit the Secretary calls an "activity" or "permit" to do on the Capitol grounds what he is otherwise legally permitted to do. The Secretary claims he has been given discretion by the Kansas legislature to do this. But the Secretary is wrong. This Capitol Statehouse grounds is a traditional public forum. *See Wells v. City & County of Denver,* 257 F.3d 1132, 1146 (10th Cir. 2001) (steps leading to county building are traditional public forum).[1]

---

[1] *Cox v. Louisiana,* 379 U.S. 536, 539, 545-46 (1965) (college students gathered "at the site of the old State Capitol Building"); *Edwards v. South Carolina,* 372 U.S. 229, 235 (1963) (demonstration on statehouse grounds was "pristine and classic form" of

6

### WHEN DOES A GROUP OR INDIVIDUAL NEED THE SECRETARY'S PERMISSION OR PERMIT?

K.A.R. 1-49-3 and 1-49-10 are facially unconstitutional. It is wholly vague as to what "sponsored by a private group" means. It is overinclusive and underinclusive. Why is it prohibited when sponsored by a "private" group versus a "public" group. Or not prohibited when sponsored by a private individual? The meeting, demonstration, and solicitation prohibition is facially unconstitutional for the same reasons. And although the Secretary attempts to rewrite 1-49-10 with adjectives in his policy to "non-legislative" meeting, "public" demonstrations, and "outside" solicitation but these limiting adjectives are not in the regulatory language. And what is the compelling or significant governmental interest in prohibiting these activities unless the Secretary permits? Irrespective of whether an applicant needs or wants a "specific space" to do those activities, Dr. Spiehs is still required to obtain permission under

---

First Amendment activity); *Henry v. City of Rock Hill,* 376 U.S. 776, 777 (1964); *United States v. Nassif*, 97 F.4th 968, 975 (D.C. Cir. 2024) (interior of the Capitol building was a non-public forum but it was "long recognized" that the exterior Capitol Grounds was a traditional public forum); *Hulbert v. Pope*, 70 F.4th 726, 738 (4th Cir. 2023) (legislative buildings and the steps that lead to them "occupy a special place in our First Amendment tradition"); *Occupy Columbia v. Haley*, 738 F.3d 107, 121 (4th Cir. 2013) (entire state-house grounds are traditional public forum); *Pouillon v. City of Owosso,* 206 F.3d 711, 716-17 (6th Cir. 2000) (steps leading to city hall are traditional public forum as they are "in the highest degree linked, traditionally, with the expression of opinion"); *Watters v. Otter,* 986 F. Supp. 2d 1162, 1173 (D. Idaho 2013) (state house and surrounding area are traditional public forum because "expressing grievances at the site of the State Government is the most pristine and classic form" of First Amendment speech); *Kanelos v. County of Mohave,* 893 F. Supp. 2d 1001, 1012 (D. Ariz. 2012) ("Where a government building houses legislative activities, courts have typically held that the building's grounds are a traditional public forum") (collecting cases); *Lederman v. United States,* 291 F.3d 36, 41 (D.C. Cir. 2002); *Cmty. for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 387 (D.C. Cir. 1989) ("There is no doubt that the Capitol Grounds are a public forum").

all circumstances to have a "meeting" or "demonstrate" or "solicit" on the Capitol grounds.  But these regulations are unconstitutional as there  is no compelling or significant government interest in imposing these restrictions upon Dr. Spiehs.  The plaintiff seeks forward-looking relief against the State of Kansas which includes injunctive relief in this lawsuit which the State is not immune from. *See Frank v. Lee,* 84 F.4th 1119, 1130-31 (10th Cir. 2023).   Then the DoA requires the Secretary's permission if any activity or event needs a specific space. Ex. 2, p.2 ("no activity or event needing a specific space may occur without submitting and receiving approval….")  Every individual and every group "needs" a space at the Capitol grounds if one desires to be present on the grounds.  Actually, there can be no location-carve-out on the Capitol grounds as it is a public forum and as admitted in the DoA policy which specifically states there can be no exclusion.  This state interest in allocating a "specific space" that carries with it no exclusion authority is unconstitutional as well as completely absurd and illusory. It accomplishes nothing. As the Capitol grounds is completely a traditional public forum, a "specific space" is everyone's space.  The DoA has no authority to parcel a "specific space" out of the composite outside Capitol grounds' spaces available to the general public.  The DoA restriction setting out this "need" for a "specific space" is a complete ban on all First Amendment activities unless the Secretary gives his permission.  And if an individual or group appears on the Capitol grounds occupying a "specific space" this policy violation is a sufficient basis for KHP to arrest and expel each from the Capitol

8

grounds.  No one knows what it means to need a specific space when it does nothing to actually reserve that space or accomplish excluding individuals from it.

1-49-3 & 10 are vague and violates the First Amendment and the right to assemble.  This *need-a-specific-space* is vague and unconstitutional.  These terms including the "specific space" determination is completely open-ended. "Vagueness and overbreadth are logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).  Any "indeterminate prohibition carries with it the opportunity for abuse," particularly when that prohibition "has received a virtually open-ended interpretation." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) (quoting *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus*, 482 U.S. 569, 576 (1987)). Under *Mansky* the DoA need-a-specific-space criteria is unreasonable because it "fails to define key terms, lacks any official guidance, and vests too much discretion in those charged with its application."  *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.,* 89 F.4th 1337, 1347 (11th Cir. 2024).  A "grant of unrestrained discretion to an official responsible for monitoring and regulating First Amendment activities is facially unconstitutional." *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation,* 322 F.3d 1298, 1310 (11th Cir. 2003).  The government, in short, must avoid enforcement that is "haphazard and arbitrary." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.,* 942 F.3d 1215, 1243 (11th Cir. 2019).

### THE SECRETARY'S STATED INTEREST AND CONDITIONS – NEEDING OR RESERVING A SPACE

There is no compelling state interest in the complete ban of meetings/demonstration/solicitation or picnics and lunches on Statehouse grounds or

coupled with the Secretary's permission. The DoA NCUP scheme makes a distinction between activities that purportedly "need" a specific space as opposed to those activities that do not have that need – yet the organizer still wants to reserve a specific space. As to the don't-need-it-but-want-it specific space the Secretary states that this category is reserved for "all non-meetings, public demonstrations, or outside solicitations in the Statehouse or on its grounds…" Thus, if the Secretary determines the activity does not need a specific space but an organizer still wants a specific space, this restriction encompasses the vague categories of nonlegislative meetings, public demonstrations, and outside solicitations. None of these restrictions fit any significant governmental interest. The interest of the Secretary is stated in his Overview that its "primary purpose is to serve the operation and functions of state government, they are also open for public use and enjoyment" and that it was designed to deal with "interfere with the primary functions of the Statehouse and its grounds or which would harm or destroy the natural, horticultural, or architectural beauty, or harm the physical condition or safety of the Statehouse and its grounds, the public, or the employees working therein."

How does the overbroad idea of needing a specific space or reserving a space correlate to interfering with the primary functions of the Statehouse or its grounds? It doesn't. And as a preview to the unconstitutional anti-discrimination participation requirement, how does the Secretary's non-discrimination participation requirement connect to any of those goals? It does not. Every individual needs a "space" – a place to be physically present. Anyone wanting to enter the Capitol grounds to

demonstrate, meet, or solicit needs a "space." And given the fact this is a public forum with no authority to exclude – and for that matter even under the NCUP it does not authorize the exclusion of anyone, this "reservation" cannot function as a rental or leasing arrangement. Thus anyone can be present in "spaces" on the Capitol grounds even if reserved. And then the terms are vague and subject to arbitrary enforcement. Putting aside the Secretaries adjectives to 1-49-10, what exactly is a "non-legislative meeting" on the outside of the Capitol? Does it mean a gathering of people who talk about legislation? Does it mean a gathering of people who have some kind of legislative purpose or one that is organized and participated by legislators? But irrespective of how this vague phrase is interpreted, "legislative" is content based. Then there is a restriction as to a "public demonstration" which means what – any speech made public? Is it limited to just speech that constitutes a protest? A protest is content based as it only concerns negative speech. A parade or eulogy would not be included in this category. Then there is the "outside solicitations" which encompasses what? Requests for money or does it mean asking for a commitment from someone? Or asking for anything other than money? Since *Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("charitable appeals for funds, on the street . . . are within the protection of the First Amendment."), it is beyond dispute that begging is speech protected by the First Amendment. And since the Supreme Court's ruling in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), it is beyond dispute that anti-panhandling laws which regulate speech based on content and in a traditional public forum, must satisfy strict-scrutiny review. Overall, these

categories are so vague as to be unintelligible or requires everyone that wants to meet, demonstrate, or solicit to obtain the Secretary's permission.

### THE BENEFIT TO DR. SPIEHS OF HAVING A PERMIT

Dr. Spiehs was denied a permit because he had to agree to the NCUP which incorporated 1-49-3&10. The Secretary disclaims all authority over the inside of the Capitol as he states "LAS controls the use of noncommon areas within the Statehouse on the 3rd, 4th, and 5th floors…: as well as disclaiming the Auditorium and Classroom space to the Kansas State Historical Society. As to all other areas, there is a benefit for a permit regarding reserving spaces inside the Capitol. What might be a nonpublic forum is allowed to be occupied by the applicant. But the Secretary's permitting scheme is not limited to the inside of buildings at the State Capitol. Instead, it encompasses both. Preliminarily, all of the activities cited for a permit are content based. The list of benefits of an event permission appear at least as follows:

1. Lunches and picnics sponsored by private groups.
2. Reservation of a space or a specific space inside or outside the Capitol Complex.
3. Having meetings and non-legislative meetings, demonstrations, public demonstrations, solicitation, and outside solicitations.
4. Activities occurring inside the Capitol in which the DoA will provide "power, seating, a podium, tables, easels, PA system, and other related items."
5. Reserving the South steps or grounds for up to 8 continuous hours and on weekends.
6. Reserving activities or set up activities beyond the normal 8 to 4 hours.
7. Sound systems are provided by DoA of which DoA will provide services and monitor noise levels and inspect electrical systems.

### PERMIT SCHEME REQUIRES UNCONSTITUTIONAL CONDITIONS

The Secretary also asserts authority to do things, based upon his issuance of a permit, that he otherwise could not do to individuals on the grounds of the Capitol.

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205, 214 (2013).

No individual needs the secretary's permission to do things one could already do at any "space" on the Capitol grounds as it is a traditional public forum. Yet upon issuing a permit, the Secretary says he has authority to limit the activity to a particular area on the Capitol grounds. And individuals could gather, meet, have performances, and demonstrate using their own volunteers or employees. But doing those same things under the Secretary's permit then means the individuals or group must allow all to participate as volunteers or employees under his anti-discrimination requirement. In paragraph 28 on page 6 it states "Violation of any Statehouse policy, guidelines, or regulations may result in arrest and/or removal from the Statehouse." Thus if an event organizer who was Roman Catholic refused to allow satanist Michael Stewart to participate in the organizer's event this constitutes not only a basis for being completely removed from the grounds but being arrested. Then, under the "Kansas Highway Patrol" provision on page 6, this result is again stated when it states that if the "conditions set forth in a reservation of Statehouse space have been breached, approval for the event will be revoked and the Kansas Highway Patrol may exercise its law enforcement powers and have the violator removed from the Statehouse, or arrested, if warranted." This gives KHP authority to criminalize conduct merely for violating any rule of the NCUP however slight.

### THERE IS NO SIGNIFICANT GOVERNMENTAL INTERESTS THAT ARE NARROWLY TAILORED

The Secretary declares *ipse dixit* that "the Secretary is allowed to place certain nondiscriminatory and narrowly drawn time, place, and manner restrictions on events involving freedom of expression, provided such restrictions are not based on

13

content." But the Secretary's recitation of the law is incomplete – even for content free restrictions it must still "achieve a significant government interest." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, (1983) (restrictions on a traditional public forum "only if it is content neutral, narrowly tailored to achieve a significant government interest"). Dr. Spiehs must agree to the unconstitutional participation requirement as well as the other requirements to obtain the Secretary's permission. Individuals already have a First Amendment right to meet, demonstrate, or solicit on the grounds of the State Capitol despite the regulations and without obtaining the Secretary's permission. Government cannot turn a traditional public forum into a non-public one by its own say so. *See U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 133 (1981) (Government "may not by its own *ipse dixit* destroy the public forum status of locations which have historically been public fora"); *First Unitarian Church of Salt Lake City v. Salt Lake City Corp*., 308 F.3d 1114, 1131 (10th Cir.2002) (convinced the City "has attempted to change the forum's status") "Time, place, or manner restrictions cannot bootstrap themselves into validity by their mere existence." *Henderson v. Lujan,* 964 F.2d 1179, 1183 (D.C.Cir.1992) Nor can "unconstitutional restrictions… by their mere existence, bootstrap subsequent restrictions into validity." *Lederman,* 291 F.3d at 43.

### *HURLEY* | PARTICIPATION VS ATTENDANCE / USE

Having stated individuals cannot be excluded the Secretary then imposes his anti-discrimination requirement called "participation." "Participation" is far different than "attendance" or "presence" at the Capitol Statehouse grounds.

In *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Boston,* 515 U.S. 557 (1995), it dealt with a participation requirement. A state court's order requiring private parade organizers to allow a Gay Lesbian group to participate violated the organizers' First Amendment rights. It "essentially required [the organizers] to alter the expressive content of their parade." Id. at 572–73. *See McGlone v. Metro Gov't of Nashville,* 749 F. App'x 402, 407 (6th Cir. 2018) ("distinction between demanding to participate in another's speech and demanding merely to speak is a meaningful one"). *See Parks v. City of Columbus*, 395 F.3d 643, 651 (6th Cir. 2005) (individuals did not seek to participate in its speech by requesting to be staff members, vendors, performers, or booth attendants).

## Co-Religionists

The anti-discrimination participation requirement mandates Dr. Spiehs associate with non-co-religionists. The church autonomy doctrine protects religious organizations' freedom in "matters of church government as well as those of faith and doctrine." *Kedroffv. St. Nicholas Cathedral,* 344 U.S. 94, 116 (1952). *See Natal U. Christian & Missionary All.,* 878 F.2d 1575, 1576-77 (1st Cir. 1989) (non-profit religious corporation); *Shaliehsabou U. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 810 (4th Cir. 2004)

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff