IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Justin Spiehs <br>                 Plaintiff <br> v. <br> Erik Smith, *et al* <br>                 Defendants | Case No.  5:25-cv-4067-TC-GEB <br><br> PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS |

**OVERVIEW**

The plaintiff Dr. Justin Spiehs filed this lawsuit on July 8, 2025, at 9:52 a.m. Dr. Spiehs made an application for a permit from the defendant Secretary and was denied. ECF 1, ¶ 145. Dr. Spiehs intends to return on other dates without obtaining a permit to protest, demonstrate, solicit, and meet. *Id.*[1] Proffitt has substantively re-written provisions of K.A.R. to his liking.  The permit process of defendant Secretary Proffitt brings with it many governmental benefits which were denied to Dr. Spiehs because he would not agree to the many unconstitutional conditions contained in July 2025 Policy for Usage of the Kansas Statehouse and Grounds. ECF 1, ¶¶120-134. One of the new conditions Secretary Proffitt imposed on event applicants is contained in paragraph 8 (ECF 4-3) which prohibited Dr. Spiehs from limiting or restricting participation in his event "on the basis of race, color, religion, sex (including

---

[1] Subsequent facts occurred after the filing in which Kathleen Williams emailed Dr. Spiehs July 8, 2025, at 10:52 a.m. ECF 4-5.  The letter attached to the email stated that "Please note that approval of your event is subject to acknowledgment and agreement to abide by the Policy. Failure to do so by the date of your event will result in the cancellation of your event" and that "your request will be approved upon acknowledgement and agreement as referenced above." ECF 4-4.  Dr. Spiehs responded at 11:21 a.m. stating "I don't agree to the terms of the July 1, 2025 policy. ECF 4-5.  Williams responded at 11:27 a.m. stating "your application as not approved." *Id.*

pregnancy, sexual orientation, and gender identity), age, disability, national origin, or genetic information." Dr. Spiehs pled that this burdened the exercise of his religion (ECF 1):

> 120. Dr. Spiehs seeks not only damages but forward-looking relief in an injunction allowing him to exercise his religious liberty and share his faith. That right is doubly protected by the First Amendment's free exercise and free speech clauses. The constitutional right to share one's faith is no accident. Government suppression of speech is commonly directed precisely at religious speech.
> 121. The defendant Secretary's new Capitol Use Policy imposed upon Dr. Spiehs to not act consistently with his religious convictions regarding who he chooses to volunteer, use, or employ at a permitted event. This Policy requires Dr. Spiehs to impose no limitations or restrictions to participants in his permitted event based upon "sexual orientation," "gender identity," or "genetic information." This "sexual orientation" would include individuals who self-report as heterosexual, homosexual, bisexual, or having any combination of gender expression or identity.
> 122. The idea that "genetic information" is widely vague and overbroad and requires Dr. Spiehs to be ignorant of individual's actual biology, records based upon blood and DNA testing. The participation policy of defendant Proffitt forces Dr. Spiehs to use or employ people who are not his coreligionists: those who do not share, and who behave in ways antithetical to, his Christian beliefs and messaging. Call the participation policy direct or indirect burdens – which both occur – this policy burdens Dr. Spiehs as defined under the KPRFA.
> 123. The new Policy correctly declares Dr. Spiehs has no authority to exclude anyone from the Capitol Complex during his event but attendance and forced participation are two different things. Dr. Spiehs has no problem whatsoever in having all of the identified categories of individuals the Secretary has listed attend the Capitol Complex during his event. In fact, Dr. Spiehs welcomes it as a way to make his messaging known. But it is another issue altogether to require, under the participation requirement, that Dr. Spiehs to use or hire individuals of the same behavior or self-reporting categories in his event. In effect, the "participation" provision prohibits Dr. Spiehs from making any employment of vendors, staff, or volunteers that considers an individual's sexual orientation. There are no exemptions provided. Under the Secretary's participation requirement, Dr. Spiehs must interact and associate with all of these individuals in a manner that burdens his religious convictions and expressions.
> 124. And under Proffitt's new Capitol Use Policy, limiting in any way the individual's full participation merits not only denial of a permit, but revocation of the permit. In fact, as the new Policy states, a "violation of any Statehouse policy, guidelines, or regulations may result in arrest and/or removal from the Statehouse" thus a violation of this participation requirement prior to or during the event is

considered to give the Secretary discretion to make this violation a crime or to issue no trespass declarations and banning Dr. Spiehs entirely from the Capitol Complex.
125. Dr. Spiehs has religious convictions regarding participants in his event as identifying as they were biological born, not identifying as transgender, LGBTQ, or feminist.
126. Dr. Spiehs applied to the Secretary for a permit to conduct an event on the Capitol Complex on July 1, 2025, to have an "event" on July 15, 2025, which requires him to allow individuals to participate in his event as volunteers, staff, booth attendants, musicians, and other kinds of participants who Dr. Spiehs holds religious disagreements with which would burden Dr. Spiehs exercise of his religious practice and exercise.

***

130. Dr. Spiehs is faced with a Hobson's Choice of either remaining true to his religious convictions and be denied the Secretary's permit or acting contrary to those religious convictions in order to obtain the Secretary's permit benefit.
131. Defendant Proffitt's actions, orders, and policies as applied to the plaintiff, both directly and indirectly, constrains, inhibits, curtails and denies her respective practices or observance of religion under section 7 of the bill of rights of the constitution of the state of Kansas.
132. The defendant Secretary's actions, orders, and policies requires the plaintiff to act or refuse to act in a manner substantially motivated by a sincerely-held religious tenet or belief, whether or not the exercise is compulsory or a central part or requirement of their respective religious tenets or beliefs.
133. That the interests referenced by the actions, orders, and policies of the defendant Proffitt in his official capacity, as applied to the plaintiff, are not of the highest order and not otherwise served.
134. There is no clear and convincing evidence that this participation policy furthers a compelling governmental interest, as applied to the plaintiff or that those actions, orders, and policies are the least restrictive means of furthering any compelling governmental interest as applied to this plaintiff.

**DEFENDANTS IGNORE THE PIVOTAL FORUM QUESTION**

The defendants do not mention the word "forum" and do not analyze the quintessential question of what forum exists either in a Capitol building or on the Capitol grounds. The defendant Proffitt muddles the distinctions between the inside of Capitol buildings and Capitol grounds. The Capitol areas for defendant Proffitt's permits, inside and outside, are traditional public forum subject to strict scrutiny with narrow tailoring.

3

## PROFFITT'S PERMITTED AREAS ARE A TRADITIONAL PUBLIC FORUM

Everywhere in which the Secretary purports to have permitting power are traditional public forums. To analyze a First Amendment challenge, there are three-steps: (1) whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities;" and (3) "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review." *Verlo v. Martinez,* 820 F.3d 1113, 1128 (10th Cir. 2016). This Capitol Statehouse grounds is a traditional public forum. *See Wells v. City & County of Denver,* 257 F.3d 1132, 1146 (10th Cir. 2001) (county building steps are traditional public forum). Infringement on speech at a traditional public forum is subject to strict scrutiny. Traditional public forums, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983); *Shero v. City of Grove, Okl.,* 510 F.3d 1196, 1202 (10th Cir. 2007). Defendants do not claim that Dr. Spiehs' speech could be categorized as unprotected speech.

Defendants still implicitly dispute that the Capitol grounds is a traditional public forum claiming less than strict scrutiny applies (p.16 citing *Doe v. City of Lafayette,* 377 F.3d 757, 770-71 (7th Cir. 2004) and *Souders v. Lucero*, 196 F.3d 1040, 1045 (9th Cir. 1999)).[2] They claim that that all of the permitting and speech

---

[2] *Doe v. Lafayette* did not concern protected speech but loitering. *Souders* concerned an alumnus' claimed access to Oregon State University in which he did not have constitutionally protected interest in having access to the university).

restrictions are only subject to intermediate or rational basis scrutiny. ECF 17, p.6. Defendant Secretary posits a hypothetical of "two large groups converged on the same specific space of the Statehouse or its grounds. The Secretary would have no advance notice of the potential conflict and no way to resolve competing claims to the same space, which could result in conflict that threatens the public, employees, and the statehouse itself." ECF 17. p.13. This is a red herring as traditional public forums present no conflicts over space – they are non-exclusive and open to all. The hypothetical "two large groups" are already allowed to occupy the same space without Proffitt's permit and benefits even as Proffitt concedes this. This claimed governmental interest in allocating or reserving spaces is made up from whole cloth and non-existent. Even the defendant's big-group vs. individual one size fits all is not narrowly tailored. Defendant Proffitt muddles the significant distinction between Dr. Spiehs' application for an event at the Capitol grounds and not the interior of the Statehouse.

### THE PERMITTING PROCESS IS A BENEFITS PROGRAM

The approval of an application brings with it governmental benefits.[3] Secretary Proffitt enacted numerous conditions in order for Dr. Spiehs to enjoy his permit scheme. The NCUP states, and every applicant must agree to this, that:

---

[3] The list of benefits appear at least as follows:
1. Lunches and picnics sponsored by private groups.
2. Reservation of a space or a specific space inside or outside the Capitol Complex.
3. Having meetings, non-legislative meetings, demonstrations, public demonstrations, solicitations, and outside solicitations.
4. Activities occurring inside the Capitol in which the DoA will provide "power, seating, a podium, tables, easels, PA system, and other related items."

[applicant will not] limit or restrict participation in the event on the basis of race, color, religion, sex (including pregnancy, sexual orientation, and gender identity), age, disability, national origin, or genetic information.

The Secretary's approval of an application still comes with a price that plaintiff must agree to all of the conditions set out by the Secretary. This is a poison pill that violates the KPRFA. the Free Exercise and Free Speech Clauses. So for Dr. Spiehs to obtain the benefits in the application process, it effectively prohibits Dr. Spiehs from carrying out his religiously motivated reasons that are critical to his faith. Dr. Spiehs applied and was denied by Secretary Proffitt because Dr. Spiehs would not agree to the above condition which required Dr. Spiehs to violate his religious convictions. Putting Dr. Spiehs to the choice of participating in a generally available benefit program or surrendering its constitutionally protected religious exercise penalizes its religious exercise and constitutes a substantial burden. *Trinity Lutheran Church of Columbia, Inc. v. Comer,* 582 U.S. 449, 462 (2017) ("When the State conditions a benefit in this way, … the State has punished the free exercise of religion: 'To condition the availability of benefits … upon [a recipient's] willingness to … surrender his religiously impelled [status] effectively penalizes the free exercise of his constitutional liberties'") (quoting *McDaniel v. Paty,* 435 U.S. 618, 626 (1978)). And this participation requirement is not generally applicable because the purported

---

5. Reserving the South steps or grounds for up to 8 continuous hours and on weekends.
6. Reserving activities or set up activities beyond the normal 8 to 4 hours.
7. Sound systems are provided by DoA of which DoA will provide services and monitor noise levels and inspect electrical systems.

"participation discrimination" is allowed in the same space by the same or other speakers. This poison pill is not neutral because it targets religion with its theology opposed to self-declared sexual orientation and gender identity. Dr. Spiehs' religious exercise requires him to limit or restrict participation in his event based upon religion, sexual orientation, gender identity, and genetic information. Although the participation requirement, by its own terms, presumes or otherwise recognizes that Dr. Spiehs has authority to deny "participation," the defense counsel assert otherwise claiming that this participation requirement only prohibits Dr. Spiehs from excluding individuals "from taking part in a permitted event." ECF 17, p.4. But the phrase "taking part in" still assumes Dr. Spiehs possesses power to exclude. However the Court interprets the participation condition, the provision still means something. Defendants concede this and claim prohibiting discrimination is itself enough of an governmental interest. It is not. The defendants cannot assert a general interest in nondiscrimination; they must show that they have a compelling interest in denying Dr. Spiehs approval for his application. *See Fulton v. City of Philadelphia, Pa.,* 593 U.S. 522, 541 (2021). Strict scrutiny requires a "precise analysis" in which "courts must scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Id.* Defendant can identify no compelling interest here. After *Carson*, at least one court has concluded that asserted state interests in "eliminating discrimination in hiring as well as in educational access are not interests of the highest order' such that the anti-discrimination rules can survive." *Darren Patterson Christian Acad. v. Roy,* 699 F. Supp. 3d 1163, 1186 (D. Colo. 2023) (granting

7

preliminary injunction to Christian preschool against Colorado's anti-discrimination provisions). Such "broadly formulated interests" simply do not suffice. *Fulton* at 541. Defendants cannot demonstrate that the poison pill is narrowly tailored. A law is not narrowly tailored where the "proffered objectives are not pursued with respect to analogous non-religious conduct, and those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U. S. 520, 546 (1993). Even under defendants' skewed definition, Proffitt's participation requirement is still a real condition requiring Dr. Spiehs to allow an individual to participate in his event with the attributes categorized by the defendant Proffitt still burdens Dr. Spiehs' speech and religious exercise under the KPRFA and the U.S. First Amendment. Dr. Spiehs suffered an injury when defendant Proffit conditioned his approval to Dr. Spiehs' application, then denied it when Dr. Spiehs would not agree to those conditions. This action by the defendant Proffitt is highly likely to be repeated with each application made by Dr. Spiehs. Defendant Proffitt has not disavowed whatsoever in his sworn statement that he will not continue to enforce his new policy. The 2025 policy requires Dr. Spiehs to compromise his message and religious convictions in order to obtain an approval for his application. Enjoining the 2025 policy is not moot as it has been applied to Dr. Spiehs and is facially burdensome by its own terms.

### RESERVING A SPACE MEANS PROFFITT HAS AUTHORITY TO EXCLUDE OR CONVEY BENEFITS BASED UPON THE PERMITTING PROCESS

To reserve a space within the Capitol through the permitting process, defendant Proffit bans picnics, lunches, solicitations, demonstrations, and meetings

8

unless he gives permission. Proffitt also conditions approval and his conveyance of benefits upon Dr. Spiehs' required agreement to the NCUP non-discrimination categories. Proffit claims he has a "legitimate interest" in burdening speech and religion if it "prevents discrimination." ECF 17, p.7. Those areas within the Capitol building not named offices is still a traditional public forum. It requires Dr. Spiehs to obtain an individual permit or defendant Proffitt's permission before engaging in expressive activities if the benefit of a "specific space" is to be provided – (along with the sound system etc. benefits). A permitting scheme that "requires single individuals to inform the government of their intent to engage in expressive activity in a public forum, a requirement that neither [the Ninth Circuit] nor the Supreme Court has ever countenanced is not permissible." *Santopietro v. Howell,* 73 F.4th 1016, 1023 (9th Cir. 2023). Picnics, lunches, meetings, demonstrations, and solicitations are not a content neutral time, place and manner regulations because the underlying purpose is to suppress particular ideas and "singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir.2009). "Demonstrations" and "solicitations" are entirely content based and singles out those two subjects for different treatment (complete ban unless permission given). Defendant Proffitt has not offered evidence or argument in support of the proposition that it is necessary to restrict protected solicitation, protected demonstrations, meetings, or lunches that do not threaten public safety in order to achieve its stated goal. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 948-50 (9th Cir.2011) (striking down ordinance prohibiting

9

solicitation of business, employment, and contributions on streets and highways as overbroad).

**NO EVENT ORGANIZER HAS A RIGHT TO RESERVE A SPECIFIC SPACE ON THE CAPITOL GROUNDS**

The defendant Proffitt could no more allocate space on the Topeka sidewalks or its public parks than he purports to do on the Capitol grounds. Defendant Proffitt bans meetings, lunches, solicitations, and demonstrations unless he gives a permit or otherwise provides permission. To obtain the benefits of a permit, the organizer must attempt to "reserve a specific space." Can a "specific space" be "reserved" on the Capitol grounds? Defendant Proffitt says this is permissible at a traditional public forum. He is wrong.

**SECRETARY PROFFIT'S "COMPETING SPACE " INTERPRETATION IS NONSENSICAL**

The Secretary insists he has the power to allocate or reserve space on the Capitol grounds. But claiming it does not make it so. So Proffitt's counsel says unless and individual wants this special space reservation benefit, the individual is free to forego this benefit and nevertheless disregard the Secretary's conditions. *See* ECF 17, p.14 ("No individual or group need give the 5 business days advance notice either, unless they desire to reserve a specific space…. All others need not"). But Proffitt cannot rewrite KAR 1-49-10[4] using his policy which categorically prohibits, with permit or not, all "meeting, demonstration, or solicitation on any of the grounds…without the prior permission of [Proffitt]." And then all applicants seeking

---

[4] To which his policy states something different. This rewrite exceeds Proffitt's statutory authority. The Court can declare which requirements apply.

10

Proffitt's benefits must still agree to the poison pill. Proffitt's interpretations are both contrary to the rights associated with a traditional public forum and nonsensical if defense counsel' interpretations mean anything. Thus, no individual now (unlike before) has the power to exclude attendance at the Capitol grounds – whether one is an approved permitted event organizer or not. Yet Proffitt claims he nevertheless retains that exclusion right upon his approval. The Secretary certainly does not possess authority to effectuate that unconstitutional permitting scheme. The Secretary Proffitt insists he has a significant governmental interest in a "potential conflict" his inability to "resolve competing claims to the same space." ECF 17, p.13. Allocation or reservation of space must presume the Secretary has authority to exclude individuals from the Capitol grounds or to a particular location at the Capitol grounds. One must exchange Proffitt's benefits of space reservation and others in exchange for banning expressive activity of demonstrations, solicitations, and meetings. The Secretary asserts he has authority to give one group or one individual greater or lesser freedoms of speech and religion (along with benefits) as to this traditional public forum called the Capitol grounds. But as a traditional public forum, there is no power to exclude by anyone including the Secretary as to the outside Capitol grounds. Thus, the Secretary himself has no power to exclude and no authority to allocate space on the Capitol grounds. Proffitt's "competing space" interest is not only not a significant government interest it is illusory and non-existent. This lawsuit concerns Dr. Spiehs presence outside the Statehouse – the Capitol grounds – upon which there can be no "competing groups" because it is a

11

Public Forum and in particular, paragraph 3 of the NCUP contained in Ex.2 recognizes this by explicitly stating that any permit does not authorize an event organizer to exclude an individual's presence at the Capitol. Ex. 2 ("3. The use of the public areas of the Statehouse and/or its grounds is nonexclusive, so other members of the public have free access to and may use the Statehouse and/or its grounds during the scheduled time of an event")  Thus there can be no "competing claims to the same space" when it comes to the Capitol grounds. But according to defendant Proffitt, he maintains individuals are still required to obtain his permission to eat, have lunch, have a picnic on the Capitol grounds because of this so-called "competition for space" in this historic public forum on the Capitol grounds.  Proffitt still maintains that individuals must obtain his permission in having "meetings, demonstrations, and solicitations" on the Capitol grounds under Kansas statute to obtain his benefits because of this same "competing space" government interest.

## PROFFITT'S PARTICIPATION REQUIREMENT

Defendants wordsmithing of "participation" to mean "take part in" is a distinction without a difference.  "Take part in" could encompass an even broader scope of conduct that "participate."[5]  To say that these individuals must be allowed to "*take part* in a permitted event" of which this definition has no boundaries and does

---

[5] *See* Participate, Webster's Second (defining "participate" as "to have a share in common with others; to partake" and "to share in profits"); Participate, Webster's Third (defining "participate" as to "partake" and "to take part in something"); Participation, Black's Law Dictionary (11th ed. 2019) (defining "participation" as the "act of taking part in something"); Participate, The Oxford English Dictionary (2d ed. 1989) ("To take or have a part or share of or in....").

not define the contours of that mandated "participation." Indeed, the policy itself declares that no limitation or restriction may be imposed upon an individual in *participating in* the event. And note that counsel did not claim it meant "attendance." Taking part in volunteering, or being a vendor, or even an employee is still contemplated. It presumes Dr. Spiehs retains some power to limit or restrict an individual taking part in Dr. Spiehs' event. Defendant Proffitt claims he has a "legitimate interest in preventing discrimination at permitted events on the Statehouse grounds" which is entirely different exercise than allocating space.

The Supreme Court has restricted "the government's ability to force one speaker to host or accommodate another speaker's message." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (FAIR), 547 U.S. 47, 63 (2006); *see Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston, Inc.,* 515 U.S. 557, 566 (1995); *Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal.,* 475 U.S. 1, 20-21 (1986); *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258 (1974). In those cases, the First Amendment violation "resulted from the fact that the complaining speaker's own message was affected by the speech it was forced to accommodate." *FAIR* at 63. In *Hurley* the Court concluded that because "every participating unit affects the message conveyed by the [parade's] private organizers," a law "dictating that a particular group must be included in the parade  Having stated individuals cannot be excluded the Secretary then imposes his anti-discrimination requirement called "participation."  Attendance at an event is merely observatory in nature.

13

"Participation" is an entirely different subject. To "take part in" obviously includes taking part as a volunteer, vendor, or employee of the event organizer.

The illusory interpretation is also nonsensical. Dr. Spiehs makes the distinction between mere "attendance" at the event – in which the NCUP already declares an event organizer has no authority to exclude individuals from being present at the event. Having "free access to" or "use of the Statehouse" is entirely different in limiting or restricting "participation in the event." If an event organizer were hosting a debate between two groups, paragraph 8 mandates that no individuals could be excluded as participants in that debate (or :"take part in" that debate) based upon the NCUP criteria – which is entirely different than attendance to watch that debate.

The Court should look to the plain or ordinary meaning of "participation in the event." *See Hain v. Mullin,* 436 F.3d 1168, 1173 (10th Cir. 2006); *Toomer v. City Cab,* 443 F.3d 1191, 1194 (10th Cir. 2006). The Court should employ the Whole-Text canon in which the NCUP must be construed as a whole. *See Navajo Nation v. Dalley,* 896 F.3d 1196 (10th Cir. 2018) (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012). Construing the language together, the drafter certainly chose different phraseologies using "participation in the event" and not "attendance." Paragraph 8 only makes sense if another condition is being imposed upon event organizers that go beyond the power to exclude an individual from the Capitol area. Interpreting paragraphs 3 and 8 to mean the identical prohibitions in the same policy renders their respective use "insignificant, if not

wholly superfluous." *Navajo* at 1215 ("If possible, every word and every provision is to be given effect.... None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence")). Thus if paragraph 8 was intended to only encompass "attendance" as defense counsel claims,[6] why didn't the drafter simply say "limit or restrict attendance at the event" rather than "limit or restrict participation in the event"? "*Participation in* the event" is far different that *attendance at* the event. What purpose does paragraph 8 serve if it only applies to mere attendance? The defendants' interpretation not only obscures the broad meaning of "participation in the event" as it is superfluous and adds nothing which is not a reasonable interpretation of this policy. And if the defendants' interpretations are plausible, it still fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Hill v. Colorado,* 530 U.S. 703, 732 (2000). Putting all of that aside, irrespective of how the Court interprets "participation in the event" it still recognizes Dr. Spiehs power to restrict and Proffitt's approval bringing his space reservation benefits. Defendants' motion to dismiss should be denied.

| CERTIFICATE OF SERVICE | /s/Linus L. Baker |
|---|---|
| On August 26, 2025, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record. | Linus L. Baker, KS 18197<br>6732 West 185th Terrace<br>Stilwell, KS  66085-8922<br>Telephone:  913.486.3913<br>Fax:            913.232.8734<br>E-Mail: linusbaker@prodigy.net<br>Attorney for the plaintiff |

---

[6] And it is defense counsel's interpretation as Proffitt's sworn statement makes no such claim or interpretation.