## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JUSTIN SPIEHS,                          )
                                        )
               Plaintiff,                     )
                                        )
v.                                      )          Case No. 25-4067-JWB-BGS
                                        )
ERIK SMITH, *et al.*,                   )
                                        )
               Defendants.                    )
_____ )


## REPLY IN SUPPORT OF MOTION TO DISMISS
## BY INDIVIDUAL CAPACITY KANSAS HIGHWAY PATROL DEFENDANTS
## GRADY WALKER, STEPHEN BYTTNER, BRYCE MANKER,
## FLORENCIO CHAVEZ, & SCOTT SCHEIBE

Plaintiff Justin Spiehs's response does not bolster his legally deficient claims against Kansas Highway Patrol Officers Grady Walker, Stephen Byttner, Bryce Manker, Florencio Chavez, and Scott Scheibe (the KHP Defendants). He incorrectly argues that he should be able to pursue a Kansas Preservation of Religious Freedom Act (KPRFA) without allegations of his protected religious exercise. He ignores—and has therefore waived any response to—Defendants arguments on arguable probable cause, his deficient claims for due process, for a declaratory judgment, and against Defendant Scheibe. He fails to identify clearly established law with sufficient particularity to overcome KHP Defendants' qualified immunity defense. And he does not plausibly allege a claim for false arrest or excessive force. The KHP Defendants request the Court dismiss Counts I, IV, V, VI, and VII against them in their entirety.

## I.     Spiehs admits his Complaint is factually deficient in alleging a KPRFA claim.

Spiehs admits that the only allegations in his Complaint as to the religious character of his conduct are his description of himself as a "street preacher" who "preached his messaging at the two events through his signs." Doc. 27, Pl.'s Opp. Br. at 10; Doc. 1 ¶¶ 113, 116. Spiehs alleges that his sign at the June 2025 "No Kings" protest read "Illegals Drain American Resources" and "Deport Feminist Bitches First then Illegals." Doc. 1 ¶ 64.

To proceed with a claim under the KPRFA, Spiehs must allege that the government substantially burdened his right to exercise of religion. K.S.A. 60-5303(a). This is not, as Spiehs contends, a factual question. It is question of whether Spiehs has plausibly alleged a substantial burden to his right to exercise his religion. He has not. As a matter of law, carrying a sign with a purely secular message about immigration is not an exercise of religion. *See, e.g.*, *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 398 (S.D.N.Y. 2023); *Krause v. Tulsa City-County Library Comm'n*, No. 16-CV-643-JHP-TLW, 2017 WL 337996, at *2, 2017 U.S. Dist. LEXIS 8849, at *6 (N.D. Okla. Jan. 23, 2017); Doc. 25 at 3-4. The Court should dismiss Count I.

**II.      Spiehs fails to meet his burden to overcome the presumption of qualified immunity.**

Once a defendant raises qualified immunity as a defense, the burden "shifts to the plaintiff[]

to show that the officials are not entitled to qualified immunity. *Sanchez v. Guzman*, 105 F.4th

1285, 1295 n.3 (10th Cir. 2024). Spiehs fails to carry that burden here. Even at the pleading stage,

Spiehs must (1) plausibly allege facts that make out a violation of a constitutional right, and (2)

show that the law was clearly established at the time of the challenged conduct. *Keith v. Koerner*,

707 F.3d 1185, 1188 (10th Cir. 2013). While Spiehs argues that he has pled sufficient factual

matter in his Complaint to satisfy his burden under the first element, he fails to show the law was

clearly established that an officer could not enforce a permit system in a public forum to create

protest zones and to exclude opposing protest groups from such zones.

Spiehs incorrectly attempts to define the right at a high level of generality. He contends

that *Hope v. Pelzer*, 536 U.S. 730 (2002), permits him to ignore the particularity requirement for

clearly established law in an "obvious" case. Doc. 27, Pl.'s Opp. Br. at 11–12. While *Hope* hasn't

been explicitly overruled, the Tenth Circuit has observed that it "appears to have fallen out of

favor, yielding to a more robust qualified immunity." *N.E.L. v. Douglas County*, 740 F. App'x

920, 928 n. 18 (10th Cir. 2018) (citing *Aldaba v. Pickens*, 844 F.3d 870, 874 n.1 (10th Cir. 2016));

*see also Price v. City of New York*, No. 15 Civ. 5871, 2018 WL 3117507, at * 17 (S.D.N.Y. June

25, 2018) (noting Supreme Court's "retreat from [*Hope*] is palpable"). Since *Hope*, the Court has

regularly reaffirmed the well-established principle that "'clearly established law' should not be

defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft

v. al-Kidd*, 563 U.S. 731, 742 (2011)). The clearly established law must be "'particularized' to the

facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U. S. 635, 640 (1987)). In other words,

the plaintiff must identify a case where an "officer acting under similar circumstances" was held

to have violated the plaintiff's constitutional or statutory rights. *Id.* While Spiehs regularly claims

this is an "obvious" case under *Hope*, he fails to "cite[] any precedent deeming similar conduct obviously egregious." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1311 (10th Cir. 2021).

    Spiehs cites several Supreme Court and Tenth Circuit cases for the proposition that the law was "clearly established" at the time of his arrest that streets, parks, and sidewalks are public fora. Doc. 27, Pl.'s Opp. Br. at 12. His repeated insistence that the Statehouse steps are a public forum—an issue not disputed by Defendants for the purposes of this Motion[1]—relates only to the highest level of generality without any similarity to the facts alleged in the Complaint. Spiehs has alleged he was arrested in retaliation for exercising his First Amendment rights while standing amongst "No Kings" protesters instead of with pro-Trump counter protestors, after he declined the KHP Defendants' command to relocate to a separate area. Doc. 1 ¶¶ 59–64, 69. But none of the cases he cites place his arrest "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).

    The Court in *Hague v. Committee for Industrial Organization*, 307 U.S. 496 (1939), invalidated a permitting scheme for city streets and parks that allowed a government official to arbitrarily deny a permit on his "mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.'" *Id.* at 516. Similarly, in *United States v. Grace*, 461 U.S. 171 (1983), the Court invalidated a statute prohibiting displays on Supreme Court grounds as applied to the public sidewalks surrounding the building. *Id.* at 180. The Court in *Forsyth County, GA. v. Nationalist Movement*, 505 U.S. 123, (1992), invalidated an ordinance as a content-based restriction on speech. And the Tenth Circuit jurisprudence Spiehs cites likewise relates only to the determination of

---

[1] Spiehs regularly mischaracterizes KHP Defendants' argument on this point. For instance, he reads KHP Defendants' brief to argue that the "Secretary of Administration's permit converted the Capitol steps into a non-public space and delegated exclusion authority to private organizers." Doc. 27, Pl.'s Opp. Br. at 1. Nowhere in KHP Defendants' brief do they make such a claim. Rather, KHP Defendants argue that even assuming the Statehouse steps are a public forum, it was not clearly established at the time of the challenged conduct the KHP Defendants could not lawfully command Spiehs to relocate to the protest zone with pro-Trump counter protestors.

3

whether a particular space is a public forum. *See First Unitarian Church of Salt Lake City v. Salt Lake City Corp.*, 308 F.3d 1114, 1129 (10th Cir. 2002); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1255 (10th Cir. 2005). None of these cases addressed a similar conduct by an officer in similar circumstances—that is, an officer's arrest of individual in a public forum with separate protest zones based on that individual's refusal to relocate to a different protest zone—or a judicial determination that such conduct by the officer clearly violated the law.

These cases don't show this is an "obvious" case of a First Amendment violation. Other circuit courts have granted qualified immunity to officers who, in the enforcement of separate protest zones, considered the content of a plaintiff's speech. *See Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1200 (9th Cir. 2021) ("Considering the lack of any precedent to the contrary, it was not unreasonable for Officer Doe to believe that it was lawful for him to examine the substance of Yaghtin's speech in order to enforce the separate protest zone policy."); *Kroll v. U.S. Capitol Police*, 847 F.2d 899, 903 (D.C. Cir. 1988) (qualified immunity granted to officers who arrested plaintiff for protesting in area permitted to a different group with a contrary position).

Additionally, Spiehs ignores KHP Defendants' arguments as to *arguable* probable cause, which is the relevant inquiry under the qualified immunity defense. *Spiehs v. Armbrister*, No. 24-4005-JAR-BGS, 2025 WL 548423, at *10, 2025 U.S. Dist. LEXIS 29373, at *25 (D. Kan. Feb. 19, 2025). While Spiehs contends that the "[o]fficers' mistaken belief" as to the effect of a permit "cannot create probable cause," Doc. 27, Pl.'s Opp. Br. at 10, arguable probable cause exists when "the officers' conclusions rest on an objectively reasonable, *even if mistaken*, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (emphasis added).

Spiehs is incorrect that *Blankenship* involved an active shooter and that the Court did not consider the type of forum—the plaintiff in that case alleged he was a peaceful protestor in a public

4

forum. *Blankenship v. Louisville-Jefferson Cnty. Metro Gov't, Kentucky*, No. 3:23-CV-235-RGJ, 2024 WL 1221180, at *1 (W.D. Ky. Mar. 21, 2024). The Court still granted the officer's motion to dismiss on qualified immunity grounds because the officer had probable cause under the permitting scheme alleged in the plaintiff's complaint, on which the officer was entitled to rely. *Id.* at *7–8. Spiehs claims—without analysis—that an officer is not entitled to rely on a statute that is "patently violative of fundamental constitutional principles." Doc. 27, Pl.'s Opp. Br. at 10–11. But the *Blankenship* court relied on the same Supreme Court decision Spiehs cites and concluded that the analogous permitting scheme was just such a law on which the officer was entitled to rely. *See id.* at *7 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)). Plaintiff fails to meet his burden to overcome the presumption of qualified immunity. The Court should dismiss Count V.

### III.    Spiehs has not plausibly alleged excessive force.

Spiehs cites three Tenth Circuit cases for the proposition that *any* force used in effectuating an arrest not supported by probable cause is excessive force. Doc. 27, Pl.'s Opp. Br. at 11. While these cases exist, KHP Defendants have been unable to locate the quotes Spiehs attributes to those opinions. Contrary to Spiehs's suggestion, the Tenth Circuit has held that "in a case where police effect an arrest without probable cause . . . but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention *but not an additional claim for excessive force*." *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007) (emphasis added). In other words, the Court must still conduct the *Graham* analysis even absent probable cause, and Spiehs must still come forward with more than allegations of a de minimis injury. He has not done so. Regardless, as discussed, the KHP Defendants had probable cause to arrest Spiehs. The Court should therefore dismiss Count VII.

### CONCLUSION

For these reasons, the KHP Defendants' Motion to Dismiss should be granted.

Respectfully submitted,

FOULSTON SIEFKIN LLP

By: */s/ Eric Turner*

    Anthony F. Rupp       KS 11590
    Eric Turner           KS 25065
    Jacob T. Schmidt     KS 28917
    7500 College Boulevard, Suite 1400
    Overland Park, Kansas 66210
    T (913) 498-2100 | F (913) 498-2101
    trupp@foulston.com
    eturner@foulston.com
    jschmidt@foulston.com

ATTORNEYS FOR KANSAS HIGHWAY
PATROL DEFENDANTS WALKER,
BYTTNER, MANKER, CHAVEZ, SCHEIBE

## CERTIFICATE OF SERVICE

I certify that on October 27, 2025, the foregoing was electronically filed with the Clerk of the Court by using the Court's e-Filing system which will send notification of electronic filing to counsel for all parties of record.

    */s/ Eric Turner*
    Eric Turner

6